Filed 3/20/13  Sanai v. Saltz CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CYRUS M. SANAI, | B232770 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC235671) |
| v. | |
| HARVEY A. SALTZ et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Reversed with directions.

Cyrus Sanai, in pro. per., for Plaintiff and Appellant.

Jacobson Russell Saltz & Fingermann, Michael J. Saltz, Colby A. Petersen and Blair Schlecter, for Defendants and Respondents.

Cyrus M. Sanai originally sued The U.D. Registry, Inc. (UDR)[1] and its owner, Harvey A. Saltz, in September 2000 for several torts and for violation of statutes regulating consumer credit reporting agencies based on UDR's negative credit reports following a dispute between Mr. Sanai and his landlord over the amount of rent due for a Newport Beach apartment Mr. Sanai had leased. Notwithstanding more than 12 years of extremely contentious litigation, the case remains unresolved in the trial court.[2] In the most recent episode of this ongoing saga, on April 28, 2011 the trial court declared Mr. Sanai a vexatious litigant and prohibited him, pursuant to Code of Civil Procedure section 391.7, from filing in propria persona any new litigation in the courts of this state

---

[1]    UDR was acquired by First Advantage Corporation in April 2004. On April 21, 2005 we granted Mr. Sanai's unopposed motions to substitute First Advantage Corporation for UDR in the appeal then pending before us. First Advantage Corporation thereafter actively participated in the litigation and was expressly identified as UDR's successor in interest. (See, e.g., *Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 751 (*Sanai 2009*).) First Advantage Corporation was itself subsequently acquired, although the parties disagree whether by Corelogic, Inc. or its subsidiary Corelogic US, Inc.—a dispute we refused to resolve. The Irvine Company, which has an ownership interest in the entity that had leased the apartment to Mr. Sanai, is also named as a defendant in the current, operative pleading. For consistency and clarity we refer to the defendants collectively as the Saltz parties.

[2]    Although Mr. Sanai has suffered repeated defeats in the trial court, he has been more successful before this court. (See *Sanai v. Saltz* (June 28, 2005, B174924, B170618) [nonpub. opn.] (*Sanai 2005*) [reversing denial of Mr. Sanai's motion to set aside as void the judgment entered during appeal of the order denying special motion to strike and remanding with directions to conduct further proceedings based on the state of the pleadings on January 16, 2001]; *Sanai 2009, supra,* 170 Cal.App.4th 746 [reversing in part judgment entered after trial court granted motions for judgment on the pleadings filed by Mr. Saltz and UDR]; see also *Sanai v. Saltz* (Mar. 21, 2002, B147392) [nonpub. opn.] (*Sanai 2002*) [affirming trial court's denial of special motion to strike filed by Mr. Saltz and UDR]; *Sanai v. Saltz* (Sept. 16, 2010, B219963) (*Sanai 2010*) [nonpub. opn.] [affirming trial court's denial of special motion to strike Mr. Sanai's first amended supplemental verified complaint].)

without first obtaining leave of the presiding judge or justice of the court where the litigation is proposed to be filed.[3] We reverse that order.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was last before us following the trial court's September 28, 2009 denial of the Saltz parties' special motion to strike the first four causes of action of Mr. Sanai's first amended supplemental verified complaint. (See *Sanai 2010, supra* (Sept. 16, 2010, B219963).)[4] The Saltz parties filed their notice of appeal on October 27, 2009. We affirmed that order in a nonpublished opinion filed on September 16, 2010. (*Ibid*.)

On February 18, 2010, while their appeal was pending in this court, the Saltz parties moved in the trial court to declare Mr. Sanai a vexatious litigant pursuant to Code of Civil Procedure sections 391, subdivision (b), and 391.1.[5] The Saltz parties also sought and obtained over Mr. Sanai's objection permission for the motion to be heard on shortened time and for leave to extend the page limit for the memorandum in support of the motion. On March 10, 2010 we granted Mr. Sanai's petition for writ of supersedeas, ruling the vexatious litigant motion was subject to an automatic stay of proceedings under section 916, subdivision (a), triggered by the filing of the Saltz parties' appeal, as described in *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 [appeal from denial of special motion to strike under § 425.16 effects an automatic stay of the trial court proceedings].)

---

[3] The court did not grant Mr. Saltz and UDR's additional request that Mr. Sanai be required to furnish security as a condition to proceeding with this litigation. (See Code Civ. Proc., §§ 391.1-391.3.)

[4] Prior to filing their special motion to strike, the Saltz parties had demurred to the fifth cause of action of the first amended supplemental verified complaint, which sought to vacate as void or voidable an award of statutory damages/sanctions of $500 awarded to the Saltz parties pursuant to Code of Civil Procedure section 724.050, subdivision (e), earlier in the proceedings and an award of attorney fees of $50,501.25 pursuant to Code of Civil Procedure section 724.080. Shortly after denying the special motion to strike, the trial court sustained the demurrer without leave to amend.

[5] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

Our remittitur in *Sanai 2010* issued on November 16, 2010. On December 16, 2010 the Saltz parties renewed their motion to declare Mr. Sanai a vexatious litigant with a 63-page supporting memorandum, several declarations and multiple volumes of exhibits. The Saltz parties contended Mr. Sanai must be found to be a vexatious litigant as a matter of law pursuant to section 391, subdivision (b)(4), because the Ninth Circuit had already found him to be a vexatious litigant for his meritless attacks on federal judges. Although not expressly referring to section 391, subdivision (b)(3), which defines a vexatious litigant to include a self-represented litigant who "repeatedly files unmeritorious motions, pleadings, or other papers . . . or engages in other tactics that are frivolous or solely intended to cause unnecessary delay," the moving papers also appeared to assert Mr. Sanai was properly found to be a vexatious litigant on this alternate ground. More than 40 pages of the 63-page supporting memorandum were devoted to the Saltz parties' argument Mr. Sanai could not succeed on the merits of his four remaining causes of action, a prerequisite to an order requiring security pursuant to section 391.1.

On January 18, 2011 the court rejected Mr. Sanai's contention it lacked jurisdiction to decide the vexatious litigant motion because the Saltz parties, in filing their second motion, had failed to comply with section 1008's procedural requirements for reconsideration of their first, unsuccessful motion. The court ruled the dismissal of the initial motion, based on our order granting Mr. Sanai's petition for writ of supersedeas, was procedural only and did not preclude a determination on the merits of the new motion. On February 9, 2011 Mr. Sanai filed his opposition papers; and on February 16, 2011 the Saltz parties filed a lengthy reply in support of the motion in which they referred specifically to section 391, subdivision (b)(3), as a basis for a vexatious litigant finding and also argued for the first time that Mr. Sanai had filed in propria persona more than five unsuccessful proceedings or civil actions in the past seven years within the meaning of section 391, subdivision (b)(1). Mr. Sanai objected to the Saltz parties' attempt to raise new grounds for a vexatious litigant finding in their reply papers.

4

After a hearing on February 18, 2011 the court ruled the Saltz parties had failed in their moving papers to satisfy their burden by presenting sufficient evidence to enable the court to find Mr. Sanai a vexatious litigant under section 391, subdivision (b)(3) or (4)—specifically rejecting their argument that Mr. Sanai's conduct in repeatedly filing motions to tax costs or his frequent recusal motions and objections to the various trial judges who had presided over the case constituted tactics that were frivolous or solely intended to cause unnecessary delay. However, the court observed the arguments raised for the first time in the reply papers might persuade it to declare Mr. Sanai a vexatious litigant. Although those arguments were largely based on exhibits submitted with the moving papers, the court explained it would be improper to consider them without giving Mr. Sanai an opportunity to respond. Accordingly, it allowed Mr. Sanai to submit a further opposition and set a new hearing on the motion.

The court heard further argument on April 22, 2011 and took the matter under submission. On April 28, 2011 the court filed its order, granting the motion in part. The court declared Mr. Sanai to be a vexatious litigant pursuant to section 391, subdivision (b)(1) and (3), and issued a prefiling order pursuant to section 391.7. The court again rejected the contention the order of the Judicial Council of the Ninth Circuit imposing sanctions, including a prefiling review order, on Mr. Sanai for filing frivolous misconduct complaints against federal judges was a proper basis for a vexatious litigant finding under section 391, subdivision (b)(4), because the Saltz parties had failed to establish that the federal proceeding was "based upon the same or substantially similar facts, transaction, or occurrence" as the case at bar. Similarly, the court found neither Mr. Sanai's conduct with respect to motions to tax costs, which are essentially defensive in nature, nor his repeated challenges to the bench officers presiding in the case, with respect to which Mr. Sanai has had some success, constituted "a pattern that rises to the level of a frivolous litigation tactic" within the meaning of section 391, subdivision (b)(3). However, the court found Mr. Sanai was a vexatious litigant under subdivision (b)(3) based on other conduct in the case, specifically his filing of improper memoranda

5

of costs, attempting to acquire a fraudulent abstract of judgment, refusing to execute a satisfaction of judgment because he had been overpaid and failure to serve proofs of service or notations of mailing.

In addition, notwithstanding its conclusion with respect to section 391, subdivision (b)(4), the court found Mr. Sanai was a vexatious litigant under section 391, subdivision (b)(1), based on his unsuccessful filing of judicial misconduct complaints concerning 19 federal district court and appellate judges within the past seven years.  (See *In re Complaint of Judicial Misconduct* (Jud. Council of the 9th Cir. 2010) 623 F.3d 1101.)  The court, however, declined to make a finding under subdivision (b)(1) based on other cases identified by the Saltz parties without providing the dates for final determination or on unsuccessful writ petitions filed by Mr. Sanai in this proceeding, explaining as to the latter point, "Defendants provide no authority in their motion or reply briefs that each denied appeal or writ may be considered a <u>separate</u> proceeding or litigation that has been finally determined against Plaintiff."  (Emphasis in original.)

The court continued the motion to the extent it sought an order requiring Mr. Sanai to furnish security under section 391.3, apparently to permit an evidentiary hearing pursuant to section 391.2.  It does not appear from the appellate record that such a hearing has ever been held, that the trial court has determined there is no reasonable probability Mr. Sanai will prevail in the litigation against the Saltz parties or that Mr. Sanai has been ordered to furnish security.

## DISCUSSION

### 1.  *Governing Law*

#### a.  *California's vexatious litigant statutes*

"The vexatious litigant statutes (§§ 391-391.7) are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.)  The statutes provide two complementary sets of remedies:  "In *pending* litigation, a defendant may

6

have the plaintiff declared a vexatious litigant and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security. If the plaintiff fails to furnish the security, the action will be dismissed. [Citation.] In addition, a potential defendant may prevent the vexatious litigant plaintiff from filing any new litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's [or presiding justice's] permission, may then obtain its dismissal." (*Id.* at p. 1171; see *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 221 [§ 391.7 "'operates beyond the pending case' and authorizes a court to enter a 'prefiling order' that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge"].)

Section 391, subdivision (b), identifies four situations in which a litigant may be deemed vexatious, two of which are at issue in this case: Under subdivision (b)(1) a person is a vexatious litigant if "[i]n the immediately preceding seven-year period [he or she] has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been . . . finally determined adversely to the person." "Litigation" for purposes of the vexatious litigant statues is broadly defined to mean "any civil action or proceeding, commenced, maintained or pending in any state or federal court" (§ 391, subd. (a)), which has consistently been held to include appeals and certain writ proceedings. (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1170; *McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1215 (*McColm*).)

Under section 391, subdivision (b)(3), a person is a vexatious litigant if he or she, while acting in propria persona, "repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."[6] "Not all failed motions can

_____

[6] Under section 391, subdivision (b)(4), a person is a vexatious litigant if he or she has previously been declared to be a vexatious litigant by any state or federal court "in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence." The Saltz parties argued in the trial court that Mr. Sanai fell within this fourth definition of a vexatious litigant based on the pre-filing review order issued by the

support a vexatious litigant designation. The repeated motions must be so devoid of merit and be so frivolous that they can be described as a "'flagrant abuse of the system,'" have 'no reasonable probability of success,' lack 'reasonable or probable cause or excuse' and are clearly meant to "'abuse the processes of the courts and to harass the adverse party . . . .'"" (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 972; see *Golin v. Allenby* (2010) 190 Cal.App.4th 616, 639, fn. 29 ["[t]he vexatious litigant statutes do not define 'frivolous' but we note that under section 128.5, subdivision (b)(2), this term is defined as '(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party'"].)

Although an interlocutory order by the trial court designating a person to be a vexatious litigant and entering a prefiling order under section 391.7 is not expressly made appealable by section 904.1 or any other statute, such an order is immediately reviewable under either section 904.1, subdivision (a)(6), as an injunction (see *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 90) or the collateral order doctrine because it is a final decision on a matter incidental to the pending action and directs the party identified as a vexatious litigant to perform an act, that is, to obtain an order from the presiding justice or judge before filing any future litigation. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561; *Marsh v. Mountain Zephyr, Inc*. (1996) 43 Cal.App.4th 289, 297-298.)

b. *Standard of review*

The trial court's determination a person is a vexatious litigant is generally reviewed for abuse of discretion. (*Fink v. Shemtov, supra,* 180 Cal.App.4th at p. 1169; *Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1498-1499.) The findings upon which that determination is based will be upheld if supported by substantial evidence. (*Fink*, at p. 1169.) However, when "'the issue on appeal turns on a

---

Judicial Council of the Ninth Circuit on September 30, 2010 in light of Mr. Sanai's multiple frivolous misconduct complaints against federal judges. (*In re Complaint of Judicial Misconduct, supra,* 623 F.3d 1101.) The Saltz parties do not contend on appeal the trial court erred in ruling that this order did not arise from the same or substantially similar facts, transaction or occurrence as the case at bar.

8

failure of proof [in the trial court], the question for a reviewing court becomes whether the evidence compels a finding in favor of the [moving party] as a matter of law. [Citations.]  Specifically, the question becomes whether the [moving party's] evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'"" (*Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466; see generally *Valero v. Board of Retirement of Tulare County Employees' Retirement Assn.* (2012) 205 Cal.App.4th 960, 965.)

The meaning of statutory language presents a question of law we review de novo (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)  As several appellate courts have observed, portions of the vexatious litigant statutes have been "broadly interpreted."  (See, e.g., *Forrest v. Dept. of Corporations* (2007) 150 Cal.App.4th 183, 195, disapproved in *Shalant v. Girardi, supra,* 51 Cal.4th at p. 1172 & fn. 3; *McColm, supra,* 62 Cal.App.4th 1211; *In re Shieh* (1993) 17 Cal.App.4th 1154, 1167.)  Yet other decisions have upheld the vexatious litigant statutes against constitutional challenges on the ground they are narrowly drawn and thus do not impermissibly invade the right of access to the courts. (See, e.g., *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 55-57, 60; *Luckett v. Panos, supra,* 161 Cal.App.4th at p. 81; *In re R.H.* (2009) 170 Cal.App.4th 678, 702; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 541.)  As the Supreme Court cautioned in its most recent decision involving these provisions, courts must observe the limits set by the applicable statutory scheme even if  a broader rule would better serve the purposes of the vexatious litigant statutes.  (*Shalant,* at p. 1176.)

2.  *Any Purported Procedural Irregularities in the Trial Court Proceedings Were, at Most, Harmless Error*

Mr. Sanai contends the trial court committed a variety of procedural errors that require reversal of the determination he is a vexatious litigant.  In particular, he insists the court lacked jurisdiction to consider the Saltz parties' December 16, 2010 motion because they failed to satisfy the requirements for reconsideration of their earlier February 18,

9

2010 motion, which had been dismissed after this court held proceeding with that motion would violate the automatic stay triggered by the Saltz parties' appeal of their unsuccessful special motion to strike. He also argues the court improperly considered arguments raised for the first time in the Saltz parties' reply brief or advanced by the court itself after his opposition to the motion had been filed.

We have serious doubt whether the Saltz parties' second vexatious litigant motion was subject to the requirements of section 1008; but even if it was, the lifting of the stay of trial court proceedings following our decision of the Saltz parties' appeal constituted new or different circumstances within the meaning of that provision, justifying a subsequent application by the Saltz parties for the same order they had previously requested. (See § 1008, subd. (b).) More fundamentally, unlike an order requiring the plaintiff to furnish security, which may be made only upon motion of the defendant (see § 391.1), the section 391.7 prefiling order at issue in this appeal may be entered by the court on its own motion. (§ 391.7, subd. (a); see *In re R.H., supra*, 170 Cal.App.4th at p. 690.) Thus, any procedural deficiencies in the Saltz parties' papers did not limit the court's ability to notify Mr. Sanai of its intention to consider whether such an order was appropriate. It did precisely that, following receipt of the parties' papers and an initial hearing, and allowed Mr. Sanai additional time to respond to all issues concerning his status vel non as a vexatious litigant under section 391, subdivision (b), including those raised for the first time in the Saltz parties' reply memorandum.[7] Because the court could properly consider the issue on its own motion and, in fact, provided Mr. Sanai with notice and an adequate opportunity to address the matter, any procedural irregularities were necessarily harmless. (Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the

---

[7] Contrary to Mr. Sanai's assertion in this court, although permitting him an opportunity to respond to new arguments in the Saltz parties' reply papers, the trial court did not limit his additional opposition papers to those points, expressly directing him to brief "the issue of Plaintiff's status as a vexatious litigant within the meaning of 391(b)."

opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].)

We similarly reject Mr. Sanai's contention he was prejudiced by the denial of an evidentiary hearing at which he could present live testimony and cross-examine witnesses. To be sure, section 391.2, which governs the procedures for a motion for an order requiring security, contemplates the presentation of "evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." As discussed, the trial court continued the hearing on the Saltz parties' motion for security, presumably to conduct an evidentiary hearing on the question whether there is a reasonable probability Mr. Sanai will prevail in the litigation. The ruling on that aspect of the Saltz parties' motion (if there was one) is not before us. However, by its express terms section 391.2 does not apply to a section 391.7 motion for a prefiling order. Moreover, we do not construe section 391.2, as Mr. Sanai does, to give a party the right to present oral testimony, but rather as permitting the court to hear witnesses in its discretion when "material to the ground of the motion." (See generally Cal. Rules of Court, rule 3.1306(a) [evidence received at a law and motion hearing must be by declaration or request for judicial notice unless the court, for good cause shown, orders testimony or cross-examination]; *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105 ["a 'hearing' does not necessarily include 'an opportunity to present live testimony or be subject to cross examination'"].)

Here, the parties had a full opportunity to present evidence by way of declaration and exhibits, and Mr. Sanai has not identified any live testimony that would have been germane to the determination of his status as a vexatious litigant. In short, he has failed to demonstrate any purported error was prejudicial, that is, that it is reasonably probable a

11

result more favorable to him would have been reached in the absence of the claimed error.  (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

3.  *The Trial Court Erred in Determining Mr. Sanai Is a Vexatious Litigant*

a.  *The findings under section 391, subdivision (b)(1)*

The Saltz parties asserted in the trial court and maintain on appeal that Mr. Sanai unsuccessfully prosecuted in propria persona at least five litigations during the seven years preceding the hearing on their motion within the meaning of section 391, subdivision (b)(1).  Their position is based on cases discussed in a decision from the United States District Court for the Western District of Washington (*Sanai v. Sanai*, July 1, 2005, No. C02-2165Z), writ petitions filed in this court during the pendency of the instant litigation and a judicial misconduct proceeding before the Judicial Council of the Ninth Circuit.  Although the trial court declined to base a vexatious litigant finding on the first two categories of actions or proceedings, it concluded Mr. Sanai fell within the definition of a vexatious litigant under section 391, subdivision (b)(1), because of his unsuccessful pursuit of federal judicial misconduct complaints.  This was error.

i.  *The federal judicial misconduct proceeding*

Mr. Sanai filed three misconduct complaints[8] against six United States District Court judges and 13 judges of the United States Court of Appeals for the Ninth Circuit, who had been assigned to his civil cases or appeals or who participated in rulings with regard to his prior misconduct complaints.  Pursuant to the procedures prescribed by the federal Rules for Judicial Conduct and Judicial Disability Proceedings (Judicial Conduct Rules), the complaints were assigned separate docket numbers (a total of 20) for each judge named.[9]  In an order filed on November 25, 2009, Circuit Judge Reinhart dismissed

---

[8]  The appellate record is not clear whether Mr. Sanai filed one complaint that he thereafter amended twice or two complaints, one of which was subsequently amended.

[9]  The commentary on Judicial Conduct Rule 8 observes "potential problems [are] associated with a complaint that names multiple judges" and explains "separate docket numbers for each subject judge . . . would help avoid difficulties in tracking cases,

12

the complaints. Mr. Sanai petitioned for review. Judge Reinhart's order was affirmed by the Ninth Circuit Judicial Council on September 30, 2010. (*In re Complaint of Judicial Misconduct, supra,* 623 F.3d 1101.) In addition to affirming the order, the Judicial Council issued a pre-filing review order applicable to all misconduct complaints or petitions for review filed by Mr. Sanai "that relate to this matter."

These unsuccessful federal judicial misconduct complaints (whether counted as one, three or 20) do not fall within the ambit of "litigation"—"any civil action or proceeding, commenced, maintained or pending in any state or federal court"—as defined by section 391, subdivision (a). Although arguably a "civil" proceeding in the broadest sense, as the trial court ruled, unlike a motion to disqualify a federal judge in a pending case pursuant to title 28 United States Code section 455, a federal judicial misconduct complaint is resolved not by a "court," but by the" judicial council" of the appropriate circuit pursuant to statute and rules of procedure adopted by the United States Judicial Conference. (See 28 U.S.C. § 351.)

With respect to circuit or district court judges sitting within the jurisdiction of the Ninth Circuit, judicial misconduct complaints are filed with the Ninth Circuit's clerk (28 U.S.C. § 351(a); Judicial Conduct Rules, rule 7(a)(1)), evaluated initially by the chief judge of the circuit or, if that judge is disqualified, by the most senior circuit judge available (28 U.S.C. §§ 351(c), 352; Judicial Conduct Rules, rule 11), reviewed by the Ninth Circuit Judicial Council or a panel of at least five members of the Council (28 U.S.C. § 352(c), (d); Judicial Conduct Rules, rule 18), and finally, under specified circumstance, referred to the Judicial Conference of the United States with the circuit council's recommendation for action. (28 U.S.C. § 354(b); Judicial Conduct Rules, rule 20(b)(1)(C), (b)(2).) Although the judicial council for each circuit is comprised of district court and court of appeals judges and is authorized to hold hearings, take testimony, issue subpoenas and make orders (28 U.S.C. § 332(a)(1), (d)(1)), it is not itself

particularly if a complaint is dismissed with respect to some, but not all of the named judges."

13

a "court," but, as its name denotes, a "council," created to improve the administration of justice.  (28 U.S.C. § 351(d); see generally Dakolias & Thachuk, *Attacking Corruption in the Judiciary:  A Critical Process in Judicial Reform* (2000) 18 Wis. Internat. L.J. 353, 385-386.)  In its own words the Ninth Circuit Judicial Council is charged with "support[ing] the effective and expeditious administration of justice and the safeguarding of fairness in the administration of the courts within the circuit."  (See http://www.ca9.uscourts.gov/judicial_council/judicial_council.php [as of March 20, 2013.)

The Saltz parties note that Ninth Circuit Chief Judge Kozinski, in ordering a complainant in an unrelated matter to show cause why sanctions should not be imposed for filing a frivolous misconduct complaint, commented, "A complaint of judicial misconduct is a court filing and is therefore subject to normal constraints on such filings, including the requirement of good faith and a proper factual foundation."  (*In re Complaint of Judicial Misconduct* (Jud. Council of the 9th Cir. 2008) 527 F.3d 792, 797, affd. (2008) 550 F.3d 769.)  We accept Judge Kozinski's conclusion with respect to the good faith requirements for filing a misconduct complaint directed to a federal judge, but do not understand his statement as mandating the conclusion that such a filing is a civil proceeding in federal court within the meaning California's vexatious litigant statutes. Indeed, in support of his general proposition concerning the good faith prerequisites for filing a misconduct complaint, Judge Kozinski relied upon *In re Sassower* (Jud. Council of the 2d Cir. 1994) 20 F.3d 42, in which the Judicial Council for the Second Circuit expressly distinguished the judicial misconduct complaint procedure from the "normal processes of litigation," while holding that both are subject to sanctions for abuse:  "We conclude that, just as those who abuse the normal processes of litigation may be restricted in their opportunity to initiate new lawsuits, those who abuse the judicial misconduct complaint procedure may also be restricted in their opportunity to initiate new misconduct complaints."  (*Id*. at p. 44.)

14

The analogy to a misconduct complaint filed with our own Commission on Judicial Performance, although not exact, is close.  Both complaint processes are subject to abuse.  When abuse occurs, sanctions may be imposed.  Nonetheless, neither is a "litigation" within the meaning of the vexatious litigant statutes.

ii. *The cases cited by Judge Zilly*

With respect to the various cases identified by United States District Judge Thomas S. Zilly in his 2005 opinion in *Sanai v. Sanai, supra* (C02-2165Z), the trial court found the Saltz parties' evidence insufficient to establish they were finally determined adversely to Mr. Sanai within the seven-year period immediately preceding December 16, 2010.  In their brief in this court the Saltz parties respond only that Mr. Sanai submitted no evidence to the trial court demonstrating these cases did not fall within the relevant seven-year period (although, based on a footnote in the trial court's minute order, it appears he did assert at least two of those cases were outside the seven-year window).  However, it was the Saltz parties' burden to establish this essential fact, not Mr. Sanai's burden to refute it.  Moreover, as Mr. Sanai observes, it is impossible to tell from Judge Zilly's passing reference to these cases whether Mr. Sanai was self-represented in each of them.  Certainly, the record before us is not ""of such a character and weight as to leave no room for a judicial determination that it was insufficient"" to support the court's determination that Mr. Sanai was not a vexatious litigant based on these cases.  (See *Sonic Mfg. Technologies, Inc. v. AAE Systems, Inc., supra,* 196 Cal.App.4th at p. 466.)[10]  The trial court's decision not to base a vexatious litigant filing on this ground was amply justified.

_____

[10]  The Saltz parties asked the trial court to take judicial notice of Judge Zilly's 2005 opinion.  Accordingly, even if Judge Zilly's description of other actions involving Mr. Sanai had contained greater detail, those statements, standing alone, would be inadmissible hearsay.  (See *People v. Hernandez* (2011) 51 Cal.4th 733, 741, fn. 3 [court may not take judicial notice of the truth of hearsay statements in decisions and court files]; *Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768 ["we cannot take judicial notice of the truth of hearsay statements in other decisions or court files [citation], or of the truth of factual findings made in another action"].)

15

### iii. *The writ proceedings*

The Saltz parties have identified six unsuccessful petitions filed by Mr. Sanai during the pendency of the instant lawsuit—five writ petitions in this court and a petition for review in the California Supreme Court—and assert each separately constitutes one of the five required "litigations . . . finally determined adversely" to Mr. Sanai necessary to find him a vexatious litigant.[11] The trial court declined to make that finding, stating the Saltz parties had provided no authority that each denied writ or appeal in a single lawsuit is properly considered a separate litigation finally decided against the plaintiff within the meaning of section 391, subdivision (b)(1).

Apparently misperceiving the thrust of the trial court's concern, the Saltz parties note they had cited and relied upon *McColm, supra*, 62 Cal.App.4th 1211, 1216, which held "'any civil action or proceeding' includes any appeal or writ proceeding." In their appellate brief they also cite *In re Kinney* (2011) 201 Cal.App.4th 951, 958 ("The vexatious litigant statutes do not apply solely to the trial courts. Each writ petition and appeal constitutes 'litigation'"). Neither *McColm* nor *Kinney*, however, addresses whether several unsuccessful appeals or writ proceedings during the course of an ongoing lawsuit constitute more than one "litigation[] . . . finally determined adversely to the person." For his part, Mr. Sanai argues *McColm* and the cases following it have been incorrectly decided and no appeal or writ proceeding during a pending trial court action is properly considered a separate litigation within the meaning of section 391.

Whether and how the vexatious litigant statutes apply to appeals and writ proceedings—that is, whether they fall within the definition of "litigation" in section 391, subdivision (a)—has two aspects. First, does a self-represented litigant subject to an existing prefiling order need to obtain leave pursuant to section 391.7, subdivision (b), before filing an appeal or an original writ petition in an appellate court, the issue

[11] Each petition sought review of an order denying Mr. Sanai's motion to disqualify one or more of the bench officers presiding in the case. As discussed, the trial court concluded these repeated challenges by Mr. Sanai did not constitute a frivolous litigation tactic within the meaning of section 391, subdivision (b)(3).

16

addressed in *McColm*.  Second, to what extent does an unsuccessful appeal or writ proceeding contribute to the determination the litigant is properly found to be vexatious, the issue presented here.

The Legislature definitively resolved the first issue when it amended section 391.7 in 2011 to expressly authorize a presiding justice, as well as a presiding judge, to permit the filing of new litigation by a vexatious litigant subject to a prefiling order. (Stats. 2011, ch. 49, § 1.)  As explained by the Assembly Judiciary Committee, "According to the Judicial Council [which sponsored the legislation], courts have held that the vexatious litigant statutes also apply in the appellate courts, but this has not been codified. . . .  This bill would clarify that the vexatious litigant statute applies to matters in the Courts of Appeal, as well as the trial courts . . . ."  (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 731 (2011-2012 Reg. Sess.), as amended March 29, 2011, p. 6; see Sen. Com. on Judiciary, Rep. on Sen. Bill No. 731 (2011-2012 Reg. Sess.), as introduced, pp. 3, 6 ["This bill would add 'presiding justice' before 'presiding judge' to clarify that this section also applies to the Courts of Appeal."  "The Judicial Council notes that it is the practice of the courts to apply the vexatious litigant statute in the Courts of Appeal, even though the current statutory scheme does not include the term 'justice' which would indicate the statute is applicable to the Courts of Appeal.  This bill would add the term 'justice' to clarify that the statute does apply in the Courts of Appeal.  Adding the proper terminology will make the statue consistent with case law."].)  This statutory change has been implemented by the Judicial Council's approval of optional form, MC-701 (rev. Jan. 1, 2013), Request To File New Litigation By Vexatious Litigant, which has separate boxes to indicate whether the request is filed in the Court of Appeal or the superior court.[12]

---

[12]     The Judicial Council also approved a companion optional form, MC-702 (new Jan. 1, 2013), Order To File New Litigation By Vexatious Litigant, which provides for an order from either the Court of Appeal or the Superior Court and indicates under its signature line, "Presiding Justice or Judge."

17

There is no similar unambiguous statutory language or legislative history addressing the second issue. However, if the word "litigation" in the phrase "filing any new litigation" includes proceedings in the Courts of Appeal for purposes of prefiling permission under section 391.7, subdivision (a), then we would generally presume the same word in the phrase "commenc[ing], prosecut[ing], or maintain[ing] in propria persona at least five litigations other than in a small claims court" in section 391, subdivision (b)(1), also includes appellate proceedings. (See, e.g., *People v. Briceno* (2004) 34 Cal.4th 451, 461 [word used in a statute presumed to have the same meaning throughout]; see also *Musaelian v. Adams* (2009) 45 Cal.4th 512, 517 ["unless there is evidence the Legislature had a contrary intent, logic and consistency suggest the same language in analogous statutes should be construed the same way"].) That is apparently the conclusion reached by our colleagues in Division Three of the Fourth Appellate District in *Fink v. Shemtov, supra,* 180 Cal.App.4th 1160, who held an unsuccessful appeal by Fink, acting in propria persona, from a judgment entered in favor of the defendants following a bench trial and a separate unsuccessful appeal from a postjudgment order in the same underlying case awarding the defendants attorney fees constituted *two* litigations finally determined adversely to Fink for purposes of determining he was a vexatious litigant as defined by section 391, subdivision (b)(1). (*Fink*, at pp. 1173-1174.)[13]

---

[13] The *Fink* court counted as a third litigation finally determined adversely to Fink his unsuccessful appeal in an action he had filed in propria persona against an entity and two of its employees. (See *Fink v. Shemtov, supra*, 180 Cal.App.4th at p. 1171.) All three defendants were personally served; none answered; and default was entered against them. However, the trial court entered judgment only against the entity, explaining the individual defendants had participated in the transaction in their representative capacities. Fink appealed. The Court of Appeal affirmed, holding the complaint failed to adequately allege fraud by the employees, thus their failure to answer did not constitute admissions sufficient to establish individual liability. (See *ibid.*) Although that appeal was certainly determined adversely to Fink, as the court held, the lawsuit itself, which resulted in a default judgment in favor of Fink against the corporate defendant, was not.

Although relying on *McColm, supra*, 62 Cal.App.4th at page 1215, to broadly define the term "litigation" to include "any appeal or writ proceeding" (see *Fink v. Shemtov, supra*, 180 Cal.App.4th at pp. 1170, 1172), the *Fink* court also held the summary denial of a writ petition does not necessarily constitute a litigation that has been finally determined adversely to the person within the meaning of section 391, subdivision (b)(1). Based on the analysis by the Supreme Court in *Leone v. Medical Board* (2000) 22 Cal.4th 660—a case holding the judicial power of the appellate courts is not unconstitutionally impaired when the Legislature limits review of judgments in administrative mandate actions in cases of physician discipline to extraordinary writs— *Fink* distinguished "writ petitions challenging pretrial superior court rulings that could also be reviewed on appeal from the judgment ultimately entered in the action" from "situations in which a writ petition was the only authorized mode of appellate review." (*Fink*, at p. 1172.) An appellate court's summary denial of the former type of writ petition, the *Fink* court held, cannot constitute a "final" determination of litigation within the meaning of section 391, subdivision (b)(1), because the court does not take jurisdiction over the case and does not give the legal issue full plenary review. (*Fink*, at p. 1172.) However, when a writ petition is the exclusive means of obtaining appellate review, the Supreme Court in *Leone* had held, "an appellate court must judge the petition on its procedural and substantive merits, and a summary denial of the petition is necessarily on the merits. [Citations.] An appellate court that summarily denies a writ petition for lack of substantive merit or for procedural defect thereby fulfills its duty to exercise the appellate jurisdiction vested in it by the state Constitution's appellate jurisdiction clause." (*Leone,* at p. 670.) According to *Fink*, under those circumstances an appellate court's summary denial of this type of writ petition, including, as here, a writ petition challenging a ruling on a motion to disqualify a trial judge under section 170.3, is properly considered a final determination of litigation for purposes of qualifying for vexatious litigant status under section 391, subdivision (b)(1). (*Fink*, at p. 1173.)

19

Even applying these expansive holdings from *Fink v. Shemtov, supra,* 180 Cal.App.4th 1160*,* the Saltz parties have identified four, not six, writ proceedings initiated by Mr. Sanai and determined adversely to him in this court during the pendency of this lawsuit. On June 18, 2010, while *Sanai 2010* was pending in this court and after we had granted Mr. Sanai's petition for writ of supersedeas, Mr. Sanai filed a petition for writ of mandate to review the denial of a disqualification motion under section 170.3 (B225160). On July 6, 2010 we granted Mr. Sanai's request to file a supplemental petition, which included information about events occurring in the trial court subsequent to the filing of the initial petition. On July 14, 2010 we denied Mr. Sanai's request to file a second supplemental petition "without prejudice to the filing of a new, separate petition, on or before July 26, 2010, that includes all issues presented in the original and first supplemental petition and any new issues petitioner wishes to raise." Pursuant to this court's direction, on July 26, 2010 Mr. Sanai filed a new petition for writ of mandate that included the items identified in our July 14, 2010 order (B226058). Thereafter, on September 29, 2010, after receiving an opposition to the new petition and a reply in support of it, we denied the petition. The following day we dismissed the initial petition (that is, B225160), explaining it "has been rendered moot by this court's order of September 29, 2010 denying Sanai's petition number B226058." Mr. Sanai filed a petition for review following our denial of the petition in B226058, which the Supreme Court denied without comment (S187176).

Contrary to the Saltz parties' calculation, these three petitions—B225160, B226058 and S187176—can be considered, at most, a single litigation finally determined adversely to Mr. Sanai under section 391, subdivision (b)(1): Dismissal of the petition in B225160 was neither on the merits nor, in light of the superseding petition he filed at our suggestion, necessarily adverse to Mr. Sanai. (See *Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 314 ["because we dismiss the case as moot, we do not have a prevailing party on the merits on appeal"].) Similarly, denial of the petition for review in S187176 was not on the merits (see *Trope v. Katz* (1995) 11 Cal.4th 274, 287, fn. 1

20

[denial of a petition for review is not an expression on the merits of the cause]), and the Supreme Court had not taken jurisdiction over the matter within the meaning of *Leone v. Medical Board, supra,* 22 Cal.4th 660 and *Fink v. Shemtov, supra,* 180 Cal.App.4th 1160. In short, the disqualification issues presented by B225160, B226058 and S187176 were finally resolved only once.

The interrelationship among these three petitions, moreover, illustrates the deceptive simplicity of equating the term litigation for purposes of section 391.7's prefiling requirement with the phrase "litigation[] . . . finally determined adversely" to the putative vexatious litigant in section 391, subdivision (b)(1). Filing a new complaint in superior court in propria persona and filing an appeal in this court after that complaint has dismissed with prejudice both require permission if there is an outstanding prefiling order. But because the civil action commenced by the complaint is not finally determined until the appeal has been resolved and a petition for review denied, the trial court proceeding, the appeal and the petition for review should properly be considered only one litigation, not three, for purposes of determining whether the plaintiff is a vexatious litigant under subdivision (b)(1). (See *Morton v. Wagner, supra,* 156 Cal.App.4th at pp. 970-971 ["[a]ny determination that a litigant is vexatious must comport with the intent and spirit of the vexatious litigant statute . . . to address the problem created by the persistent and obsessive litigant who constantly has pending a number of groundless actions and whose conduct causes serious financial results to the unfortunate objects of his or her attacks and places an unreasonable burden on the courts"].)

Similarly, multiple appeals or writ petitions during the course of a single lawsuit may each require permission from the presiding justice if a prefiling order has previously been issued. And without question, repeatedly filing frivolous writ petitions during the course of that lawsuit can properly subject a self-represented party to a vexatious litigant finding under section 391, subdivision (b)(3). (See, e.g., *In re Kinney, supra*, 201 Cal.App.4th at p. 960; cf. *In re Whitaker* (1992) 6 Cal.App.4th 54, 55-56 [based on

21

multiple unsuccessful actions in superior court and in writ and appellate proceedings, litigant found to be vexatious within both § 391, subd. (b)(1) & (b)(3)].)  But the lawsuit itself and the issues raised in it are only finally determined after all proceedings in the trial court have concluded and all appeals and writ matters have been decided.  There is then one "litigation" that has been finally determined adversely to the losing party.  (Cf. *Shalant v. Girardi, supra*, 51 Cal.4th at p. 1169 ["litigation" as defined in § 391, subd. (a), cannot include every procedural step taken during an action or special proceeding].)[14]  At the very least, it was not an abuse of discretion for the trial court to conclude Mr. Sanai's multiple writ petitions during this lawsuit do not make him a vexatious litigant

> b. *The findings under section 391, subdivision (b)(3)*

The trial court also determined Mr. Sanai was a vexatious litigant based on its finding he had used tactics during the course of the lawsuit that were frivolous or solely intended to cause unnecessary delay.  This, too, was error.

Section 391, subdivision (b)(3), defines a vexatious litigant as a party who, while acting in propria persona, "repeatedly files unmeritorious motions, pleadings, or other

---

[14]      Mr. Sanai aptly presents a hypothetical that illustrates the insidious consequences of a contrary rule, which counts as separate litigations each unsuccessful appeal or writ proceeding during a single lawsuit.  Assume a plaintiff has sued six individuals in propria persona.  After the defendants' motions for summary judgment are granted, the plaintiff appeals and obtains a reversal as to one of the six defendants.  At that point, neither the superior court action nor the appeal has been finally determined adversely to the plaintiff.  But if we assume the summary judgment motions are heard separately and over a period of many months, the losing plaintiff must file and prosecute six separate appeals.  If the plaintiff again prevails only as to one defendant, he or she could be branded a vexatious litigant based on the maintenance of five unsuccessful appeals.  That distinction, based solely on matters of timing controlled by the defendants and the court, is both irrational and inconsistent with the purpose of the vexatious litigant statutes.  (See generally *People v. Pieters* (1991) 52 Cal.3d 894, 898-899 ["'[I]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'"].)

22

papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." The trial court interpreted this disjunctive language to limit the express requirement of repeated misconduct to the first set of abusive actions (filing unmeritorious motions, pleadings or other papers) and not the others, stating, "Repeated conduct is therefore not necessarily required if the litigation tactics engaged in by Plaintiff are frivolous or solely intended to cause unnecessary delay." The Supreme Court, however, has explained this aspect of the vexatious litigant definition requires a finding the person has "repeatedly pursued unmeritorious or frivolous tactics in litigation." (*Shalant v. Girardi, supra*, 51 Cal.4th at pp. 1169-1170; cf. *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30, 41 [according to normal English usage, adverb preceding series of verbs modifies each verb]; see generally *Long v. United States* (4th Cir. 1952) 199 F.2d 717, 719 ["[t]he use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all"].) Indeed, if "repeatedly" modified only "files" and not also "conducts" and "engages," as the Saltz parties contend and the trial court ruled, a self-represented plaintiff could be found a vexatious litigant based solely on a single instance of serving "unnecessary discovery," a plainly absurd result. (See *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27 [court should avoid a construction of statutory language that would lead to absurd results].) Thus, the correct question is not whether Mr. Sanai has ever engaged in frivolous tactics in his action against the Saltz parties, but whether he had repeatedly done so. On this record, the answer is no.[15]

---

[15] Although it may be true, as the trial court observed, that Mr. Sanai has engaged in aggressive litigation tactics that reflect "an improper motive to grind down the other side," section 391, subdivision (b)(3), does not address "abusive" litigation tactics generally, but only those that are either "frivolous" or "solely intended to cause unnecessary delay." (Compare, for example, § 128.7, subd. (b)(1), proscribing the filing of court papers "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.")

As discussed, the trial court rejected the Saltz parties' initial arguments that Mr. Sanai's repeated motions to tax costs, filed only in response to the Saltz parties' various memoranda of costs, or his multiple challenges to the bench officers presiding in the case, at least some of which ultimately proved successful, constituted frivolous litigation tactics within the meaning of section 391, subdivision (b)(3). That determination was well within the court's discretion. (See *Fink v. Shemtov, supra*, 180 Cal.App.4th at p. 1169.)

i. *Section 1013 and notations of mailing*

Turning to issues raised in the Saltz parties' reply memorandum and addressed by Mr. Sanai in his sur-reply, the court concluded Mr. Sanai had engaged in vexatious tactics by "filing improper memorandums of costs, failing to properly comply with abstracts of judgment, and engaging in methods and practices with proofs of service." With respect to his treatment of proofs of service, the trial court criticized Mr. Sanai's refusal to include proofs of service or notations of mailing on service copies of documents filed with the court—a practice that Mr. Sanai acknowledges. But as Mr. Sanai argues, although section 1013, subdivision (b), provides papers served by mail "shall bear a notation of the date and place of mailing or be accompanied by an unsigned copy of the affidavit or certificate of mailing," subdivision (h) of that provision expressly provides subdivision (b) is "directory" only—that is, although obligatory, the failure to comply does not invalidate the action to which the procedural requirement attaches. (See *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 923-924; *People v. McGee* (1977) 19 Cal.3d 948, 958.) There is no finding that Mr. Sanai did not actually serve any of the documents without a section 1013, subdivision (b), certificate or notation of mailing (although there have been claims that certain papers were never properly filed and served) or that he had violated a court order by this practice,[16] which the trial court

---

[16] In its evaluation of Mr. Sanai's practices regarding proofs of service, the trial court referred to two earlier court orders. In the first, entered in connection with a discovery dispute, the court (Judge Green) on May 12, 2006 commented, "This litigation is littered

24

conceded may be "technically proper under the Code of Civil Procedure." Nor was there any showing that hearings had to be delayed as a result of the Saltz parties' failure to receive adequate notice. Under these circumstances no substantial evidence supports the trial court's determination this practice was either frivolous or solely intended to cause unnecessary delay.

ii. *The memoranda of costs and abstracts of judgment*

The other litigation activities upon which the trial court based its vexatious litigant determination are thoroughly described in *Sanai 2009, supra*, 170 Cal.App.4th at pages 757 through 759 and 779 through 781 and need not be repeated in detail here. In brief, we had awarded Mr. Sanai his costs on appeal in *Sanai 2005* and directed the trial court to consider his request for restitution, initially made to us in connection with that appeal, and to order reimbursements to the extent appropriate. As found by the trial court and confirmed in our opinion in *Sanai 2009*, in pursuing recovery of his costs on appeal and restitution, Mr. Sanai engaged in a variety of improper and abusive practices, including seeking restitution in the form of attorney fees by way of a memorandum of costs, rather than a noticed motion; improperly serving the memorandum of costs and then altering court documents in an attempt to conceal the defective service; acquiring a fraudulent abstract of judgment after the court had struck the original memorandum; and refusing to execute a satisfaction of judgment because the Saltz parties had allegedly overpaid.

---

with claims that pleadings were never properly filed and served and there is some credible evidence that this [discovery request] was not served, or at least received by defendants, on or about October 27, 2005." Notwithstanding that observation, no order was entered regarding the methods for, or completion of proofs of, service. In the second, on July 31, 2006 Judge Green found that Mr. Sanai had improperly served a memorandum of costs directly on a corporate party without naming an officer or agent for service. The court also stated it appeared the memorandum had been filed and served "in a manner and time to prevent the parties from obtaining actual notice in time to challenge it" and directed the parties to a local rule of court requiring notice that allows the opposing party time to respond. However, once again there was no order requiring completion of a certificate of mailing or inclusion of a notation of mailing on service copies of papers filed with the court.

The evidence before the trial court fully supports its finding that these tactics were frivolous within the meaning of section 391, subdivision (b)(3)— totally and completely without merit and intended to abuse the processes of the courts and to harass the adverse party. (See *Morton v. Wagner, supra,* 156 Cal.App.4th at p. 972; *Golin v. Allenby, supra,* 190 Cal.App.4th at p. 639, fn. 29.) Indeed, based on this misconduct the trial court awarded statutory damages/sanctions and attorney fees, which we affirmed on appeal. (*Sanai 2009, supra,* 170 Cal.App.4th at p. 783.) But one such set of inappropriate litigation tactics involving the same (improper) attempt to recover costs, no matter how egregious, is not enough: Under section 391, subdivision (b)(3), a vexatious litigant determination could only be made only if Mr. Sanai had *repeatedly* pursued frivolous tactics in the litigation. (*Shalant v. Girardi, supra*, 51 Cal.4th at pp. 1169-1170; see *Morton*, at p. 972 ["there is no bright-line rule as to what constitutes 'repeatedly'" in this context, but "most cases affirming the vexatious litigant designation involve situations where litigants have filed dozens of motions either during the pendency of an action or relating to the same judgment"].) The evidence presented to the trial court was insufficient to support such a determination here.

\* \* \*

In reversing the trial court's order, we do not intend to signal our approval of the manner in which this litigation has been conducted. It has gone on far too long. It has consumed far too much of the judicial system's limited resources. Gamesmanship appears too often to take precedence over reasonable efforts to resolve procedural disputes and to address the merits of the remaining controversy. Civility and courtesy are absent. Strong oversight by the trial court is obviously necessary.[17] But applying a vexatious litigant designation beyond the limits set by the applicable statutory scheme is not the solution.

---

[17]  At Mr. Sanai's request we have considered whether in the interests of justice we should direct that all further proceedings in this case be heard by a different trial judge. (§ 170.1, subd. (c).) We decline to make such an order.

26

## DISPOSITION

The April 28, 2011 order is reversed.  Mr. Sanai is to recover his costs on appeal, but the trial court is directed to stay any enforcement of the cost award until it enters a final judgment in the matter and assesses whatever setoffs may be appropriate in light of other orders for sanctions, costs or attorney fees.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

27